1 | **TYCKO & ZAVAREEI LLP**
2 | ANNICK M. PERSINGER (SBN 272996)
  | apersinger@tzlegal.com
3 | 483 Ninth Street, Suite 200
4 | Oakland, CA  94607
  | Telephone (510) 254-6808
5 | Facsimile (510) 210-0571
6 
7 | **TYCKO & ZAVAREEI LLP**
  | HASSAN A. ZAVAREEI (SBN 181547)
8 | hzavareei@tzlegal.com
  | 1828 L Street, NW, Suite 1000
9 | Washington, DC  20036
10| Telephone (202) 973-0900
  | Facsimile (202) 973-0950
11
12| **SPANGENBERG SHIBLEY & LIBER LLP**
  | STUART E. SCOTT (OH 0064834) *pro hac vice forthcoming*
13| sscott@spanglaw.com
14| 1001 Lakeside Avenue East, Suite 1700
  | Cleveland, OH  44114
15| Telephone (216) 696-3232
16| Facsimile (216) 696-3924

17 | *Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MACEDONIA DISTRIBUTING INC., individually and on behalf of all others similarly situated | CASE NO. 8:17-cv-01692-JVS-KES |
| | Honorable James V. Selna |
| Plaintiff | |
| vs. | **PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT** |
| S-L DISTRIBUTION COMPANY, LLC | **(JURY TRIAL DEMANDED)** |
| Defendant | |

Plaintiff, on behalf of itself and other similarly situated individuals, by and through its undersigned counsel, files this Class Action Complaint, and in support thereof, avers as follows:

## NATURE OF SUIT

1. This is a Class Action Complaint brought to obtain injunctive and monetary relief on behalf of a Class of individuals who are, or were, contractually engaged and/or otherwise operated as franchisees for Defendant S-L Distribution Company, LLC ("S-L") for violations of the California Franchise Relations Act ("CFRA"), Cal. Bus. & Prof. Code §§ 20000 *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, and Intentional Interference with Prospective Economic Relations.

2. The Class consists of all individuals or entities operating distributorships in the state of California who were a party to a Distributor Agreement with S-L Distribution Company, LLC as of May 2017, and who were terminated as part of S-L's system-wide termination of distributors.

3. Christian S. Patton became a franchisee of S-L on or about February 2, 2009, when Mr. Patton entered into a Distributor Agreement (the "Agreement" or "Distributor Agreement") with G & A Snack Distributing, Inc., whereby Mr. Patton agreed to distribute certain snack food products produced by Snyder's-Lance, Incorporated ("Snyder's-Lance").

4. Subsequent to entering the Agreement, G & A Snack Distributing, Inc. was purchased by S-L. S-L is the distribution division of Snyder's-Lance for California.

5. Through an Amendment dated February 2, 2009, Mr. Patton transferred his interest in the franchise to Macedonia Distributing Inc. (hereafter "Plaintiff" or "Macedonia"). Christian and Zaneta Patton are the sole members of Macedonia.

6. Plaintiff dutifully complied with the terms of the Distributor Agreement and Amendment and profitably sold S-L products in accordance with its obligations under the Distributor Agreement.

7. In May 2017, however, S-L notified Plaintiff, as part of a system-wide purge of franchisees in California, that S-L would be terminating Macedonia's franchise. S-L expressly stated that S-L's determination to terminate Plaintiff was simply a business decision on S-L's part and not because of Plaintiff's failure to perform in accordance with the Distributor Agreement in any manner or for any good cause.

8. This system-wide purge will result in the mass and wrongful termination of hundreds of S-L franchises throughout the state of California.

9. Not only will S-L's termination eliminate Mr. Patton's livelihood, S-L forced Plaintiff, and those similarly situated, to sell back the exclusive distributorship to S-L for a substantially lower price than the franchise was worth.

10. Moreover, S-L did not use accurate weekly sales numbers to calculate the transfer or buyback price for Plaintiff and acted similarly with other members of the Class.

11. S-L's actions render S-L liable to Plaintiff, as well as similarly situated Class members, for violations of the CFRA, California's UCL, and intentional interference with prospective economic relations.

**PARTIES**

12. Plaintiff, Macedonia Distributing Inc., is incorporated in Ohio with its principal place of business located in Orange County, California. Plaintiff owns an S-L franchise located in the state of California and operated exclusively in the state.

13. S-L maintains its principal place of business at 13515 Ballantyne Corporate Place, Charlotte, NC 28232.

## JURISDICTION AND VENUE

14. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

15. This Court has personal jurisdiction over Defendant because Defendant has extensive, systematic, and continuous contact with the State of California.

16. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) because the events that give rise to this action occurred in the Central District of California.

## FACTS GIVING RISE TO THE ACTION

17. Defendant is a corporation whose business consists of snack food distribution to retail customers through, at all relevant times, franchisees to whom the company grants exclusive rights to sell and distribute its products to certain retail outlets in a defined territory.

18. Snyder's-Lance is one of the nation's largest producers of salty snacks; its brand names include Snyder's of Hanover, Jay's, Lance, Cape Cod, Grande, Tom's, Krunchers!, O-Ke-Doke, Naturals, Archway, and others.

19. No entity may wholesale Snyder's-Lance products anywhere in the United States without express permission from Snyder's-Lance or S-L, pursuant to a written agreement.

**A.    The Relationship Between S-L and Franchisees**

20. Defendant became a party to and assumed the obligations of the Agreement with Plaintiff and each of the other Class members to sell, merchandise, distribute and deliver snack food products to retailers located in California.

21. A vast majority (if not all) of S-L's sales in California are or were accomplished through wholesale resellers like Plaintiff.

22. The Agreement between each member of the Class and Defendant is the same in all material respects.

23. The Agreement grants the Plaintiff "the exclusive right to sell and distribute Authorized Products to Authorized Outlets within [a defined territory]."

24. The Agreement requires the Plaintiff to accept and buy sufficient quantities of Authorized Products and Other Products to "adequately and properly supply Authorized Outlets and the other retail outlets in the Territory."

25. The Agreement requires franchisees to comply with S-L's standard operating guidelines, which are published by Defendant as "S-L Distribution Company, LLC's Suggested Operating Guidelines" (hereafter "Guidelines"). These Guidelines set forth the policy and procedures to be utilized by franchisees in operating their franchise and the various charges that the franchisee will incur.

26. The Agreement requires franchisees to use their best efforts to: (1) sell and distribute Authorized Products in accordance with the Agreement and the Guidelines; (2) otherwise comply with the Suggested Operating Guidelines; (3) develop new accounts and additional shelf space for Authorized Products and Other Products within the Territory; (4) maintain an adequate and fresh supply of Authorized Products; (5) properly rotate all Authorized Products and Other Products; (6) promptly remove any and all stale merchandise; (7) maintain proper service and delivery to all Authorized Outlets and other retail outlets; and (8) maintain the established, reputation and good will of the Authorized Products and Other Products.

27. The Agreement prohibits franchisees from selling any products in the Territory that compete with or "in the sole opinion of S-L, would be detrimental, in any way to the sale of the Authorized Products or Other Products."

28. The overall purpose of the Agreement is to ensure uniformity of S-L's products and control of their quality and distribution.

29. Plaintiff and members of the Class do not make sales directly to consumers. Like Plaintiff, members of the Class operate through distribution warehouses in the state of California at which they receive shipments of S-L products from S-L for sale to retail outlets.

30. Plaintiff and those similarly situated pull S-L product inventory from their respective S-L warehouse and re-sell that inventory to retailers along the routes in their respective territories as a wholesale distribution business. S-L invoices franchisees, such as Plaintiff and the members of the Class, for these transactions.

31. S-L organizes, produces, and requires that franchisees participate in marketing plans that are designed to create good will with the customers. S-L instructs franchisees how to display and organize products on store shelves, negotiate prices for products, publish print advertisements, and interact with management of chain stores to ensure that the stores are satisfied with Snyder's-Lance products and the distribution thereof.

32. Plaintiff and members of the Class were required at all relevant times to purchase and implement marketing displays promoting Snyder's-Lance brands. S-L required Plaintiff and members of the Class to follow its printed instructions for presenting Snyder's-Lance brands.

33. Plaintiff and other franchisees were integral to S-L's marketing scheme: they were the ones who delivered marketing displays to stores; who displayed S-L products in stores; who requested floor or shelf space for advertisements; and were the face of S-L to local customers.

34. S-L also assists franchisees in acquiring and purchasing shelf space in certain retail outlets for display and sale of Authorized Products.

35. S-L requires that statutory franchisees use its handheld computer system called NORAND or a device that is compatible with the company's software. The NORAND device tracks franchisee orders, customer billing, historical data, and other

information helpful to both S-L and franchisees to service customers and increase business. The NORAND device also assists with centralized billing, customer credit, and stale product management.

36. S-L requires franchisees to use its system for centralized billing and credit when servicing chain merchants.

37. S-L's mandatory computer system generates invoices that it requires Plaintiff and other franchisees to provide to customers on a daily and weekly basis. The invoices prominently display S-L's tradename, Snyder's of Hanover, Inc., on the top of every invoice followed by S-L's address, phone number, fax number, and website. The bottom of every invoice states "Thank you for doing business with SNYDER'S OF HANOVER, INC."

38. As part of its effort to hold Plaintiff and other franchisees out to third parties as one and the same, S-L consented to and directed Plaintiff and other California franchisees to use S-L trademarks, logos, or tradenames, and the trademarks, logos, or tradenames of Authorized Products.

39. Specifically, S-L provided Plaintiff with polo shirts and jackets bearing S-L trademarks, logos, or tradenames and directed franchisees to wear these when making deliveries to retailers. **[Exhibit A & B]**

40. S-L provided Plaintiff with business cards bearing S-L trademarks, logos, or tradenames and the logos of specific Authorized Products that Plaintiff showed to retailers when making deliveries. **[Exhibit C]**

41. S-L provided Plaintiff and other franchisees with marketing materials bearing S-L trademarks, logos, or tradenames, and the trademarks, logos, or tradenames of Authorized Products and directed them to use these marketing materials when soliciting retailers. **[Exhibit D]**

42. Article 20 of the Distributor Agreement permits Plaintiff and other distributors to display S-L trademark, tradename, or logo on their vehicles upon S-L's

7

PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 17-cv-01692-JVS-KES

1 approval and at S-L's cost. With Defendant's written approval and agreement, Plaintiff, in fact, displayed S-L's logo and tradename on its delivery truck. **[Exhibit E]**

43. With the prior consent of S-L and at the direction of S-L, Plaintiff marketed and distributed Defendant's products, in a truck that always bore S-L's logo, while wearing S-L polo shirts, and then handed out invoices, which regularly thanked customers "for doing business with SNYDER'S OF HANNOVER, INC." As a result, customers reasonably believed that, by buying S-L products from Plaintiff, they had done business with S-L rather than with a company that occasionally distributed S-L products. This belief that Plaintiff was substantially associated with S-L was furthered by the fact that Plaintiff negotiated sales and shelf-placement for S-L products and because Plaintiff could not sell customers any products that S-L viewed as detrimental to the sale of S-L products.

44. All of Plaintiff's gross sales were derived from the franchise; Plaintiff's business did not have any other source of income. All other S-L franchisees derive all, or nearly all, of their gross sales from their relationship with S-L because their agreement with S-L prohibits them from selling products that compete, or may compete, with S-L's products.

45. Through its investment of capital, labor, and specialized skills, Plaintiff and members of the class created good will for S-L with the customers in their territories.

46. Good will for Snyder's-Lance products is not transferrable outside of an S-L franchise because the good will created is for intangibles such as shelf space, end cap displays, the right to place free-standing displays in stores, and high-value middle shelf space.

47. Plaintiff and members of the Class cannot use the shelf space, promotional space, or high value placement anywhere but the stores in their S-L Authorized Territory.

48. Plaintiff and members of the Class cannot use the shelf space, end caps, promotional display space, or high value shelf space because such items are approved for specific brands of products. For example, Plaintiff and members of the Class would not be permitted to display Frito-Lay snack products in the space approved for Snyder's-Lance products.

49. Plaintiff and members of the Class attend approximately 8-12 hours of mandatory meetings presented by S-L each year. The purpose of the meetings is for S-L to provide mandatory training, education and guidance for promoting Snyder's-Lance products in retail outlets and negotiating with retail store management for shelf and floor space. The meetings were also used for product training, sales training, and continuing education relating to standard operating procedures, performance coaching, and tutorials on how to make sales pitches to retail store managers.

50. In addition to hosting regularly scheduled formal meetings, District Sales Managers made it a point to speak to each statutory franchisee several times per week to discuss marketing and the S-L promotional calendar.

**B.    S-L's Termination Of Its Distribution Franchises in California**

51. Snyder's of Hanover, Inc. merged with Lance, Inc. in December 2010. The merger created a hybrid system of company-owned distribution territories (45%) and independently owned (55%) distribution territories. Sometime in March 2011, the newly formed Snyder's-Lance, Inc. decided to convert all of its territories to independently owned territories.

52. Beginning in the spring of 2017, S-L notified numerous franchisees in California that their franchises were being terminated due to a system-wide restructuring of S-L's business.

53. In May 2017, Plaintiff received a letter notifying Plaintiff that S-L was terminating Plaintiff's franchise as of July 23, 2017, as a result of this same system-wide restructuring and not for any good cause.

54. S-L's termination and buyback of Plaintiff's franchise will result in the Plaintiff losing over one half of the franchise's current fair market value and all future revenue streams.

## CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action on behalf of himself and the following Class(es) pursuant to Federal Rule of Civil Procedure 23:

> All individuals or entities in the state of California who were a party to a Distributor Agreement with S-L Distribution Company, LLC and who were either: (1) terminated as part of S-L's 2017 system-wide termination of distributors or (2) received notification from S-L that their Distribution Agreement would be terminated as part of S-L's 2017 system-wide termination of distributors.

Plaintiff reserves its right to amend or re-define the Class definitions prior to moving for class certification.

56. <u>Numerosity</u>: Members of the Class are so numerous that their individual joinder is impracticable. The precise number of Class members is unknown to Plaintiff. However, upon information and belief, Plaintiff believes it to be several hundred individuals or entities. The true number of Class members is, however, likely to be known by Defendant, and thus, Class members may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

57. <u>Commonality</u>: There are numerous questions of law and fact common to Plaintiff and the Class, and those questions predominate over any questions that may affect individual Class members such that there is a well-defined community of interest among the class members, and include the following:

a. whether Plaintiff and the Class members qualify as franchisees subject to the protections of the CFRA;

b. whether Defendant violated the rights of Plaintiff and the Class under the CFRA;

c. whether Plaintiff and the Class are entitled to damages for the reasonable market value of their franchises and any additional damages;

d. whether Plaintiff and the Class are entitled to injunctive relief;

e. whether Defendant violated the rights of Plaintiff and the Class under the UCL;

f. whether Plaintiff and the Class are entitled to restitution under the UCL; and

g. whether Defendant violated the rights of Plaintiff and the Class in interfering with their ongoing economic relations.

58. <u>Typicality</u>: The Plaintiff's claims are typical of the other members of the Class. Plaintiff is informed and believes that, like other franchisees, Plaintiff was a franchisee whose Distributor Agreement was unilaterally terminated by S-L during the Class period.

59. <u>Adequacy</u>: The named Plaintiff will adequately represent the interests of the proposed Class. Plaintiff has been treated in the same manner as other proposed Class members by Defendant and has been damaged by this treatment in the same manner as other proposed Class members by Defendant's decision to terminate his franchise without good cause. Plaintiff is committed to vigorously prosecuting this action. Plaintiff has retained attorneys who are well qualified to handle lawsuits of this type. Plaintiff has no interests that are adverse to those of the proposed Class.

60. <u>Predominance</u>: This case should be certified as a class action because the common questions of law and fact concerning Defendant's liability for terminating franchise agreements without good cause will predominate over any other issues.

61. <u>Superiority</u>: A class action is the only realistic method available for the fair and efficient adjudication of the claims of the proposed Class. The expense and burden of individual litigation makes it impracticable for members of the proposed Class to seek redress individually for the wrongful conduct alleged in this complaint. Were each individual member required to bring a separate lawsuit, the resulting multiplicity of proceedings would cause undue hardship and expense for the litigants and the court, and create the risk of inconsistent rulings, which would be contrary to the interest of justice and equity. Litigating these claims in a single action will streamline discovery and avoid needless repetition of evidence at trial.

62. Defendant has acted on grounds that apply generally to the proposed Class. Specifically, Defendant has terminated the franchise agreements of all members of the Class at approximately the same time and for the same business reason. Final declaratory relief and monetary judgment is appropriate for the Class as a whole under these circumstances.

**COUNT I**
**(California Franchise Relations Act, CFRA,**
**Bus. & Prof. Code, §§ 20000 *et seq*.)**

63. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

64. The relationship between Plaintiff, as well as the Class, and Defendant is a franchise as that term is defined under the CFRA, Bus. & Prof. Code § 20001, including that:

    a. a written arrangement exists between Plaintiff, as well as the Class, and Defendant;

    b.    as exhaustively detailed above, Defendant granted Plaintiff and the Class the right to engage in the business of distributing and selling snack foods under a marketing plan prescribed by Defendant, which included, but was not limited to, invoices that thanked customers for doing business with S-L, polo shirts and jackets with S-L's logo, trucks with S-L's logo, shelf-placement according to S-L's dictates, sales pitches based on S-L training, and restrictions on sales of products that competed with S-L products;

    c.    Plaintiff and the Class operated the business using Defendant's trademark, service mark, tradename and logos according to the marketing plan prescribed by Defendant as described above, *see e.g.*, Exhibits A-E (depicting Plaintiff's performance of Defendant's marketing plan); and

    d.    Plaintiff and the Class were required to pay a fee for the right to operate as a franchise.

65. The franchise relationship at issue here is subject to the protections of the CFRA because Plaintiff, as well as members of the Class, conducted the franchised business in California.

66. As such, pursuant to the CFRA, Defendant could not terminate Plaintiff or members of the Class unless, among other requirements, it identified good cause, defined as a "failure of the franchisee to substantially comply with the lawful requirements imposed upon [Plaintiff] by the franchise agreement."

67. Defendant's actions herein, including its improper termination of the relationship among the parties without good cause, are a violation of CFRA.

68. As a consequence of the breaches and violations set forth herein, Plaintiff and the Class have been damaged.

## COUNT II
### (Violation of the "Unfair" Prong of the UCL)

69. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

70. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

71. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims.

72. Defendant violated the "unfair" prong of the UCL by engaging in an anti-competitive business practice. Specifically, Defendant terminated its franchisees' distribution agreements as part of its system-wide termination of distributors in order to purchase its franchisees' routes at below market rates so it could turn around and resell the routes for a profit. This had the effect of ruining the livelihood of Plaintiff and members of the Class by depriving them of a crucial source of income, as well as not allowing them to realize the full value of the franchises they had developed and fostered. This had the effect of harming competition because S-L sold back exclusive distributorships at inflated prices, at the expense of the franchisees' businesses—thereby eliminating franchisees like Plaintiff from competing in the marketplace. This practice of no benefit to consumers because the higher route prices only benefited Defendant, and did not reduce the prices or availability of Defendant's products to consumers. Defendant's scheme runs afoul of fair competition among businesses and is ultimately harmful to consumers as a result.

73. Defendant's scheme is also anticompetitive and unfair because it harms small businesses and violates the CFRA which serves to protect California franchisees which are typically small business owners and entrepreneurs, from abuses by franchisors in connection with the termination of franchises. Small businesses

contribute to local economies by bringing growth to communities and jobs where the business is established.

74. The gravity of the harm to Plaintiff and members of the Class resulting from these unfair acts and practices outweighs any justifications and/or motives of Defendant for engaging in such practices.

75. Through its unfair acts and practices, Defendant deprived Plaintiff and members of the class fair market value of their franchises and revenue stream from their franchises. As such, Plaintiff requests that the Court cause Defendant to restore this money to Plaintiff and all Class members, and enjoin Defendant from continuing to violate the UCL as discussed herein and/or violating the UCL in the future.

## COUNT III
### (Violation of the "Unlawful" Prong of the UCL)

76. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs

77. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

78. A business act for practice is "unlawful" under the UCL if it violates any other law or regulation.

79. As described in detail above, Defendant's misconduct violates the CFRA. Those violations are sufficient to support Plaintiff's claim under the unlawful prong of the UCL.

80. As a result of the conduct described above, Defendant has been unjustly enriched at the expense of Plaintiff and members of the proposed Class. Specifically, Defendant has been unjustly enriched by obtaining revenues and profits that it would not otherwise have obtained absent its unlawful conduct.

81. As such, Plaintiff requests that this Court cause Defendant to restore this money to Plaintiff and all Class members, and enjoin Defendant from continuing to violate the UCL as discussed here and from violating the UCL in the future.

## COUNT IV
### (Intentional Interference with Prospective Economic Relations)

82. Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

83. Plaintiff and members of the Class had ongoing economic relationships with the retailers in their defined territory to whom they sold Authorized Products with a substantial probability of future economic gain from continuing sales, developing new accounts, and adding additional shelf space.

84. Defendant as the franchisor and provider of S-L products was aware of Plaintiff and members of the Class's ongoing economic relationships with the retailers that were in their defined territory.

85. Defendant intentionally interfered with this economic relationship when it terminated Plaintiff and members of the Class's Agreements without cause, ending the ongoing economic relationship between Franchisees and the retailers in their defined territory.

86. As alleged more fully in this Complaint, by virtue of Defendant's violations of the CFRA and the UCL, Defendant's interference with Plaintiff and members of the Class's ongoing economic relationships was independently wrongful and beyond the realm of legitimate business transactions.

87. As direct and proximate result of Defendant's wrongful conduct, Plaintiff and members of the Class have sustained damages in an amount to be ascertained at trial.

88. The aforementioned wrongful conduct of Defendant was intended by Defendant to cause injury to Plaintiff and members of the Class; was fraudulent,

oppressive, malicious, and despicable, subjecting Plaintiff and members of the Class to a cruel and unjust hardship; and was carried out in a willful and conscious disregard of Plaintiff's rights and interests, so as to justify an award of exemplary and punitive damages against Defendant.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests of this Court the following relief on behalf of itself, all members of the Class, and all other similarly situated individuals:

a. An Order certifying the Class, appointing Plaintiff as Class Representative, and appointing the undersigned counsel of record as Class Counsel;

b. An Order requiring Defendant compensate Plaintiff and the other members of the Class for the reasonable market value of their franchises and all other special and general damages suffered as a result of Defendant's violation of the CFRA;

c. An Order requiring disgorgement of profits and/or payment of restitution to Plaintiff and the Class as a result of Defendant's violation of the UCL;

d. An Order requiring Defendant compensate Plaintiff and the other members of the Class for damages suffered as a result of Defendant's intentional interference with their ongoing economic relationship with the retailers;

e. An Order awarding Plaintiff and the other members of the Class punitive damages in an amount to be determined at trial;

f. An Order permanently enjoining Defendant from engaging in the wrongful and unlawful conduct alleged herein;

g. Award Plaintiff and the Class their expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

h. Award Plaintiff and the Class pre-judgment and post-judgment interest at the highest legal rate to the extent provided by law; and

i.  Grant such other and further legal and equitable relief as this Court deems just and necessary.

## JURY DEMAND

Plaintiff, on behalf of himself and members of the Class, hereby demands a trial by jury on all issues so triable.

Dated: November 22, 2017  /s/ Annick M. Persinger
Annick M. Persinger
Attorney for Plaintiff

**TYCKO & ZAVAREEI LLP**
ANNICK M. PERSINGER (SBN 272996)
apersinger@tzlegal.com
483 Ninth Street, Suite 200
Oakland, CA  94607
Telephone (510) 254-6808
Facsimile (510) 210-0571

**TYCKO & ZAVAREEI LLP**
HASSAN A. ZAVAREEI (SBN 181547)
hzavareei@tzlegal.com
1828 L Street, NW, Suite 1000
Washington, DC  20036
Telephone (202) 973-0900
Facsimile (202) 973-0950

**SPANGENBERG SHIBLEY & LIBER LLP**
STUART E. SCOTT (OH 0064834)
*pro hac vice forthcoming*
sscott@spanglaw.com
1001 Lakeside Avenue East, Suite 1700
Cleveland, OH  44114
Telephone (216) 696-3232
Facsimile (216) 696-3924